This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. The Appellant John Bohach, Sr. (hereinafter "Bohach Sr.") appeals the decision of the Mahoning County Court of Common Pleas granting summary judgment in favor of Appellees, the Coitsville Trustees (hereinafter "Trustees"). The issues presented to us for consideration are whether: 1) the Trustees were estopped from enforcing the zoning regulations against the Bohach's; 2) the zoning regulations were selectively enforced against the Bohach's; and, 3) the Bohach's property should receive a non-conforming use designation. For the following reasons, we conclude the Trustees properly enforced the zoning regulations and are therefore entitled to judgment as a matter of law. We affirm the judgment of the trial court.
Bohach Sr. is the owner of property in Coitsville Township located at 270 ½ Bedford Rd. which is zoned agricultural. John Bohach, Jr. (hereinafter Bohach Jr.), the son of Bohach Sr., operates a business on the property known as Bose Auto, a salvage yard. On September 5, 1991, the Coitsville Township Zoning Inspector filed a criminal complaint against Bohach Sr. alleging he had been operating a commercial business in an agricultural district in violation of the Coitsville Township Zoning Ordinance. Bohach Sr. was found guilty of this offense in March of 1991 in the Campbell Municipal Court. Bohach Sr. timely appealed that decision to this court, which affirmed the decision of the trial court.State v. Bohach (Nov. 10, 1994), 7th Dist. No. 92 CA 46.
While the prior appeal was pending, Bohach Sr. applied for a variance. The variance request was denied on February 24, 1992 and Bohach Sr. was sent notice of this decision on February 25, 1992. Bohach Sr. claims he was not notified of the denial until 1995 when he was again informed by the zoning inspector that he was in violation of the zoning ordinance. Bohach Sr. then proceeded to appeal the denial of the variance which was affirmed by both the magistrate and the trial court. No appeal was filed with this Court.
Sometime after the original denial of the requested variance but before 1999, the zoning inspector Alan Morris (hereinafter "Morris") requested that Bohach Jr. erect a fence and pave the driveway leading up to his property. Bohach Jr. complied with these requests.
In January of 1999, Bohach Sr. was again cited for being in violation of the zoning ordinance. Apparently in response to being cited, Bohach Sr. filed a motion for declaratory judgment requesting the present use of the land be declared a non-conforming use and the Trustees be prohibited from enforcing the zoning ordinance against him. In support of his request, Bohach Sr. advanced two theories of recovery, namely, promissory estoppel and selective prosecution.
On August 14, 2000, Bohach Sr. filed a Motion for Summary Judgment. In response, the Trustees filed both a motion in opposition and their own Motion for Summary Judgment on September 29, 2000. On November 13, 2000, the trial court denied Bohach's Motion for Summary Judgment and granted the Trustees' motion. This appeal followed.
As his sole assignment of error, Bohach Sr. alleges:
 "The trial court erred in failing to grant a motion for summary judgment (sic) in favor of the plaintiff appellant as genuine issues of material fact exist on the essential elements of the case."
Although on its face it appears Bohach Sr. has misstated the law, the assigned error appears to be challenging the trial court's ruling on the cross-motions for summary judgment, albeit set forth with typographical errors. Accordingly, we construe this assignment of error as meaning the Trustees should not have been granted summary judgment as genuine issues of material fact still exist on the essential elements of the case.
The Ohio Supreme Court delineated the standard for considering motions for summary judgment in Dresher v. Burt (1996), 75 Ohio St.3d 280.
 "We hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293.
Civ.R. 56(C) provides the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Flemming (1994), 68 Ohio St.3d 509, 511. When reviewing a summary judgment case, appellate courts are to apply a de novo standard of review. Cole v. American Indus. and Resources Corp. (1998), 128 Ohio App.3d 546, 552.
Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995),104 Ohio App.3d 598, 603, citing Turner, supra, and Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 247-248. In determining whether a genuine issue of material fact remains to be litigated, we must turn our attention to the substantive law of the claim being litigated.
Bohach Sr. relies primarily upon the doctrine of promissory estoppel to support his request for declaratory judgment. The elements of a claim for promissory estoppel are as follows: (1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and, (4) the person claiming reliance is injured as a result of reliance on the promise. Weiper v.W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 260, 661 N.E.2d 796. See also McCroskey v. State (1983), 8 Ohio St.3d 29, 30, 456 N.E.2d 1204.
The first step in our analysis is to determine whether promissory estoppel is even available against the government under these facts. The Ohio Supreme Court has explained that "as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." Ohio State Bd. of Pharmacy v.Frantz (1990), 51 Ohio St.3d 143, 145-146, 555 N.E.2d 630, 633, citingSekerak v. Fairhill Mental Health Ctr. (1986), 25 Ohio St.3d 38, 39, 25 OBR 64, 64-65, 495 N.E.2d 14.
It is well-established that the principle of equitable estoppel may be applied against a municipality acting within the scope of its authority under certain circumstances. Whiteco Metrocom, Inc. v. City of Columbus
(1994), 94 Ohio App.3d 185, 192, 640 N.E.2d 563. Conversely, the doctrine of equitable estoppel does not apply where the subject matter involved is ultra vires, illegal, or malum prohibitum. Id. "[A] municipality will be bound only by the representations authorized to be made by its officers and agents." Id.
"Individuals dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations, and their agents, and must, at their peril, ascertain whether all necessary statutory requirements relative to the subject matter of the transaction involved have been complied with." Kimbrell v. Seven Mile
(1984), 13 Ohio App.3d 443, 13 OBR 532, 469 N.E.2d 954, paragraph two of the syllabus. Ohio law requires that "whoever relies on the conduct of public authorities must take notice of the limits of their power." Cooneyv. Independence (Nov. 23, 1994), 8th Dist. No. 66509.
Accordingly, we must determine whether Morris had the actual authority to make the alleged promise. Morris was employed as Coitsville's Zoning Inspector whose "foremost responsibility is the fair and effective enforcement of the zoning resolution." (Coitsville Zoning Rules and Regulations p. 59). Bohach Sr. claims Morris was sent by the Trustees to instruct him to erect a fence and install a driveway to quiet the neighbors complaints. However, it is clear from the Zoning Rules and Regulations that the zoning inspector cannot act alone. His only power is to implement decisions made only after prior application to the Board of Zoning Appeals. (Coitsville Zoning Rules and Regulations pp. 59-68). Moreover, the variance previously requested by Bohach Sr. had already been denied as of February 25, 1992. Therefore, Morris' promise, if there was in fact a promise, would be both outside the scope of his authority and an ultra vires act.
Although we conclude Morris did not have the requisite authority to waive the enforcement of the zoning regulations, we will continue our analysis to demonstrate how Bohach Sr.'s promissory estoppel claim fails in other respects.
Initially, we note that Bohach Sr., the owner of the property, has brought suit against the trustees, rather than Bohach Jr., the person currently in possession of the property. Because the present possessor is the only party limited by the zoning, only the present possessor can be harmed by restrictions placed on the property as a result of the zoning. Therefore, the present possessor is the only party with standing to sue, or authorize a suit to be brought. Zeltig Land Dev. Corp. v. BainbridgeTwp. Bd. of Trustees (1991), 75 Ohio App.3d 302,305, 599 N.E.2d 383. Since Bohach Sr. is not the party limited by the zoning, we could decide he is barred from bringing this claim. This issue causes further complications when we consider the next element of Bohach Sr's promissory estoppel claim.
It is undisputed that in order to establish a claim of promissory estoppel, there must be a promise which is clear and unambiguous in its terms. See, e.g., Juergens v. Strang, Klubnik and Associates, Inc. (1994), 96 Ohio App.3d 223, 644 N.E.2d 1066. However, Bohach Sr. fails to distinguish his identity in this lawsuit from the identity of his son with regard to whom the alleged promise was made. This calls into question whether a party can rely upon the promises made to a third party, or more specifically, whether Bohach Sr. can rely upon statements made to his son.
Bohach Sr. claims that Morris had been instructed by the Trustees to approach him and instruct him to put up a fence and to pave his driveway to "quiet the neighbors." In his brief, Bohach Sr. elaborates:
 "Appellee specifically stated to Appellant that improvements of the property had to be made in order to avoid the neighbors complaining, therefore assuming that Appellant would be able to proceed with his business without any type of interference from anyone." * * *
Not only does the deposition testimony reveal that Bohach Sr. and Bohach Jr. were both merely "assuming" that by erecting the fence and paving the driveway there would be no further enforcement of the zoning ordinance, but in fact, Bohach Sr. had never spoken with anyone from the township regarding the fence or driveway, including the zoninginspector. Apparently, the only knowledge Bohach Sr. has of any statements made by Morris is what he was told by his son.
At the deposition of Bohach Jr., testimony was elicited from the witness that the fence was erected because:
"If you're coming south on Bedford Road, you would be able the (sic) see some of the cars that were in here. That's why the zoning man requested a fence be put up to obstruct the view of the cars."
Bohach Jr. later states that a neighbor had been complaining to the Trustees about the dust coming from his gravel driveway. He admits:
 "So they asked me to offset her complaints of this alleged dust that I have paved driveway, so I did. But this was brought up at a township meeting, and he asked me if I would be kind enough to pave it."
Although there are several statements made in reference to the appeasement of the neighbors, the record is devoid of testimony regarding any statements, let alone promises, made to either Bohach Sr. or Bohach Jr. in regards to the enforcement of the zoning regulations. As such, we are not compelled to resolve the issue regrading promises made to third parties. We find Bohach Sr.'s claim of promissory estoppel must fail as a matter of law because there was never a promise to rely upon.
We now move on to our analysis with regard to Bohach Sr.'s claim of selective prosecution. Bohach Sr. asserts that, because there are two other salvage yards operating in Coitsville that have yet to be cited for zoning violations, the zoning inspector is selectively enforcing the zoning regulations and should be prohibited from doing so.
The burden of showing discriminatory enforcement is a heavy one and is not satisfied by a mere showing that others similarly situated have not been prosecuted. Elsaesser v. Hamilton Bd. of Zoning Appeals (1990),61 Ohio App.3d 641, 648-649. "If a law, while fair on its face, is applied so as "`* * * to make unjust and illegal discriminations between persons in similar circumstances, material to their rights,' there is a denial of equal protection * * *." State v. Flynt (1980),63 Ohio St.2d 132, 134, 17 O.O.3d 81, 407 N.E.2d 15, quoting Yick Wo v.Hopkins (1886), 118 U.S. 356, 373-374, 6 S.Ct. 1064, 30 L.Ed. 220.
However, the conscious exercise of some selectivity in enforcement does not, in and of itself, violate the right to equal protection. In Flynt, supra, the Ohio Supreme Court stated:
 "`To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as "intentional and purposeful discrimination."' * * *" Id., 63 Ohio St.2d at 134, quoting United States v. Berrios
(C.A.2, 1974), 501 F.2d 1207, 1211. See, also, State v. Freeman (1985), 20 Ohio St.3d 55, 58, 20 OBR 355, 485 N.E.2d 1043.
In the present case the only motive demonstrated by the record, even when viewed in a light most favorable to Bohach Sr., is the township's desire to quiet the neighbors complaints. However, a complaint-only enforcement policy is not per se unconstitutional. Whitehall v. Moling
(1987), 40 Ohio App.3d 66, 71, 532 N.E.2d 184. While a complaint-only policy may potentially lead to a situation where officials became so influenced by private concerns that equal protection is violated, Id., the "mere existence of a potential discriminatory purpose is insufficient to show that such purpose motivated the selection of appellants for prosecution. * * *" Freeman, supra, 20 Ohio St.3d at 58. The evidence in the present case fails to establish that the apparent complaint-only enforcement policy resulted in invidious discrimination. Consequently, this claim also fails as a matter of law.
Finally, in his complaint for declaratory judgment Bohach Sr. requests his use of the land be declared non-conforming so the township can no longer enforce the Zoning Ordinance against him. However, Bohach Sr. previously applied for a variance in 1991, which was denied by the Board of Zoning on February 24, 1992.
In Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, the Ohio Supreme Court was asked to decide whether, "[a]bsent a showing of changed circumstances, the doctrine of res judicata is applicable to decisions of a board of zoning appeals denying a request for a variance, even when the subsequent action seeks a zoning certificate based on the property's alleged status as a prior legal nonconforming use as provided for in a zoning resolution." The court responded in the affirmative.
The Grava court explained the appellant's second application was based upon a claim arising from a nucleus of facts that was the subject matter of his first application. In both instances, the appellant was attempting to construct exactly the same building on the same tract of land which had fewer acres than the local zoning ordinance required. The court stated, "In fact, the only difference between the two applications is the theory of substantive law under which Grava sought relief." Id. at 383.
The appellant in Grava, however, asserted the doctrine of res judicata did not bar his second application for a zoning certificate because that action involved a distinctly different method of obtaining relief than the previous action involving his first application. He argued the facts necessary to obtain relief under a conditional use permit are different from the facts necessary to obtain a variance.
The Ohio Supreme Court responded to this argument as follows:
 "In recent years, this court has not limited the application of the doctrine of res judicata to bar only those subsequent actions involving the same legal theory of recovery as a previous action. In Natl. Amusements, Inc. v. Springdale (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180, we stated: `It has long been the law of Ohio that `an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit' (emphasis sic) (quoting Rogers v. Whitehall [1986], 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388). We also declared that `[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it' Id." Grava at 382.
The Ohio Supreme Court addressed the requisite showing of changed circumstances in Set Products, Inc. v. Bainbridge Tp. Bd. of ZoningAppeals, (1987), 31 Ohio St.3d 260, 510 N.E.2d 373. The appellant in SetProducts had obtained a state permit under a newly enacted code section to mine the subject property to exhaustion despite the fact a local ordinance made it illegal to surface mine the land. Nevertheless, the appellant maintained an unnecessary hardship would result from the inability to operate under such permit because of the local ordinance.
The court determined:
 "This argument ignores the dual jurisdiction described above, as well as the specific requirement that the state permit applicant insure in his application that future land uses within the site will not conflict with local zoning plans. R.C. 1514.02(A)(9)(b). Neither the enactment of R.C. Chapter 1514, nor the grant of a permit under that chapter amounted to a change of circumstance establishing unnecessary hardship. Any hardship incident to the permit obtained by Set Products was self-created, for which a variance will not lie. Reed v. Rootstown Twp. Bd. of Zoning Appeals (1984), 9 Ohio St.3d 54, 9 OBR 260, 458 N.E.2d 840." Id. at 265.
Similarly, Bohach Sr. has failed to produce any evidence regarding a change in circumstances which would preclude this Court from barring the dismissal of this claim based upon res judicata. Bohach Jr.'s operation of the salvage yard has always been prohibited by the local zoning laws.State v. Bohach, supra. Therefore, we conclude Bohach Sr. has failed to demonstrate any changed circumstances establishing unnecessary hardship, with the exception of the installation of the fence and driveway, which actually served to improve his property.
Moreover, we conclude that Bohach Sr.'s request for a non-conforming use designation not only fails based on the doctrine of res judicata, it also fails on its merits. Pursuant to the zoning rules and regulations employed by Coitsville, a non-conforming use is defined as being "[a]ny building or land lawfully occupied by a use on the effective date of these resolutions or any amendment or supplement thereto, which does not conform to the use resolutions of the district in which it was situated." See also R.C. 519.19.
R.C. 519.19 provides:
 "The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enactment of a zoning resolution or amendment thereto, may be continued, although such use does not conform with such resolution or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, any future use of said land shall be in conformity with sections 519.02 to 519.25, inclusive, of the Revised Code. The board of township trustees shall provide in any zoning resolution for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning resolution."
It remains uncontested by Bohach Sr. that since the township of Coitsville enacted its zoning regulations in 1955, none of the ordinances or their amendments have permitted junk yards or salvage yards in agricultural districts. Bohach Sr. testified his son began operating the salvage business 20 years ago. Bohach Jr. testifies he has been operating the business since 1980. Even when the evidence is viewed in a light most favorable to Bohach Sr., the unlawful use began well past the original 1955 enactment of the regulations. Consequently, we conclude that as a matter of law Bohach Sr.'s request for declaratory judgment must fail.
For the foregoing reasons, we find there are no genuine issues of fact remaining in dispute between the parties. We therefore affirm the decision of the trial court granting summary judgment in favor of the Trustees.
Vukovich, P.J., concurs.
Donofrio, J., concurs.