FEGATELLI, Appellant,

v.

OHIO BUREAU OF EMPLOYMENT SERVICES et al., Appellees.

[Cite as *Fegatelli v. Ohio Bur. of Emp. Serv.* (2001), 146 Ohio App.3d 275.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77705.

Decided Oct. 9, 2001.

*Smith & Condeni Co., L.P.A.,* and *Edward A. Icove,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Betsey Nims Friedman,* Assistant Attorney General, for appellees Administrator, Ohio Bureau of Employment Services, et al.

---

MICHAEL J. CORRIGAN, Judge.

An employer who fails to give affected employees sixty days notice of a plant closing or mass layoff may be liable for back pay and benefits for the period of the violation under the Worker Adjustment and Retraining Notification Act ("WARN"), Section 2102(a), Title 29, U.S.Code. The primary issue in this appeal, and one of first impression, is whether WARN installment payments constitute "remuneration" if made during a time when an affected employee is collecting unemployment compensation benefits.

The facts are undisputed. Employer PMX Industries, Inc., terminated without notice claimant Grace Fegatelli's employment on April 9, 1998. Claimant filed a claim for unemployment compensation benefits on April 13, 1998, and began receiving benefits of $216 per week. PMX terminated the rest of the work force on May 31, 1998, and closed the business.

PMX learned that it had terminated the work force in violation of WARN because it had not given prior notice of the terminations. As required by law, it paid claimant for sixty days of employment, from the week ending June 6, 1998, and continuing through the week ending August 1, 1998—a total of nine weeks. In each of these weeks, she received forty hours of pay. She received this pay at the same time she received unemployment compensation benefits in the amount of $1,944. Because the bureau did not know of the WARN payments, the bureau did not take the WARN payments into consideration at the time unemployment benefits were paid for the weeks in question.

The administrator subsequently determined that the WARN payments constituted income in excess of the weekly benefit amount in violation of R.C. 4141.31(A). The administrator ordered claimant to repay the $1,944 unemployment benefits paid during the nine-week period.

Claimant appealed this decision. A hearing officer conducted a brief hearing and decided that "[t]he claims for the weeks ending June 6, 1998 through August 1, 1998, are disallowed. Said weeks are disallowed as the claimant had deductible income in the week which was in excess of her weekly benefit amount." The hearing officer gave the following reasons:

"The facts establish that claimant received benefits in the amount of $216.00 for each of the weeks ending June 6, 1998 through August 1, 1998. The Hearing Officer found that these weeks should be disallowed as the claimant had income in the weeks which was both in excess of the claimant's weekly benefit amount

and deductible from employment compensation benefits. As this is the case, the claimant is not entitled to collect benefits for the weeks in question."

The review commission disallowed a request for review. Claimant filed an administrative appeal with the court of common pleas, which affirmed the review commission by finding that the review commission's decision was not unreasonable, not unlawful, and not against the manifest weight of the evidence.

Claimant's primary argument on appeal is that the court's decision affirming the review commission is erroneous as a matter of law because the WARN payments were not "remuneration" as defined for purposes of collecting unemployment compensation benefits. She maintains that the payments were entered as a punishment for PMX's violation of WARN, not for her performing any personal services, so as to fall outside the statutory definition of "remuneration."

WARN is intended to provide workers and their families with warning of a sudden loss of employment so as to give "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market." Part 639.1, Title 20, C.F.R. An employer cannot order a plant closing or mass layoff until the end of a sixty-day period after the employer serves written notice of such an order to each affected employee. Section 2101(a)(1), Title 29, U.S.Code. An employer who violates WARN is liable for back pay, lost benefits, civil penalties, and attorney fees. Section 2104(a)(1), Title 29, U.S.Code.

The facts are undisputed, so we consider whether the administrator's interpretation of the word "remuneration" in this context is unlawful. Because this is a matter of statutory construction, we review the administrator's decision as a matter of law, and the scope of our review is plenary. *Miller v. Ohio Dept. of Indus. Relations* (1985), 17 Ohio St.3d 226, 17 OBR 466, 479 N.E.2d 254; *Clemmer v. Ohio State Racing Comm.* (1995), 107 Ohio App.3d 594, 596, 669 N.E.2d 267.

The primary argument is that the WARN payments are not remuneration but damages payable by an employer for the WARN violation. The distinction is important—if the WARN payments are considered remuneration, claimant would not be entitled to collect unemployment compensation benefits during the time that she collected the WARN payments.

R.C. 4141.31 states:

"(A) Benefits otherwise payable for any week shall be reduced by the amount of remuneration a claimant receives with respect to such week as follows:

"(1) Remuneration in lieu of notice;

"* * *

"(4) Remuneration in the form of separation or termination pay paid to an employee at the time of the employee's separation from employment[.]"

"Remuneration" is defined in R.C. 4141.01(H)(1) as "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash, except that in the case of agricultural or domestic service, 'remuneration' includes only cash remuneration. * * *"

WARN payments are both "damages" to the employer and "back pay" to the employee. The legislative history suggests that a WARN payment is not intended as a means of replacing lost wages; rather, it is "to provide an incentive and a mechanism for employers to satisfy their obligations to their employees in the event they fail to provide 60 days advance notice [of plant closure] to their employees." H.R.Rep. No. 576, 100th Cong., 2nd Session at 1053 (1988), reprinted in 1988 U.S.C.C.A.N.2078, 2086. Nevertheless, the Ninth Circuit Court of Appeals recently stated that the back-pay provisions, although characterized as a "punishment" for the employer, are nonetheless a "make-whole compensatory remedy." See *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (C.A.9, 2001), 244 F.3d 1152, 1159.

Most of the courts addressing this issue have held that WARN payments do not constitute compensation that must be set off against state unemployment compensation benefits because they are in the nature of a penalty.

The leading case is *Georgia–Pacific v. Unemp. Comp. Bd.* (1993), 157 Pa. Commw. 651, 669, 630 A.2d 948, 957. Georgia–Pacific decided to close one of its plants and negotiated a formal closure agreement with a union that provided severance pay to the union employees. Georgia–Pacific then decided to shut down the plant earlier than agreed, and paid the employees a lump sum as required by WARN. When the employees tried to collect unemployment compensation, Georgia–Pacific resisted the claims, arguing that WARN payments constituted remuneration under applicable statute. The commonwealth court stated:

"**[M]erely because wage amounts form the basis for the formula by which to calculate the WARN payments, those payments are not lost wages; they are damages owed for violation of WARN's notice requirements.**" (Bold text *sic.*)

This view has been adopted by several other states. See, e.g., *Westinghouse Elec. Corp. v. Callahan* (1995), 105 Md.App. 25, 658 A.2d 1112; *Capitol Castings, Inc. v. Arizona Dept. of Econ. Sec.* (1992), 171 Ariz. 57, 828 P.2d 781; *Stone Forest Industries, Inc. v. Bowler* (1997), 147 Ore.App. 81, 934 P.2d 1138; *Conrad*

*v. Charles Town Races* (1998), 206 W.Va. 45, 521 S.E.2d 537; but, see, *Labor & Indus. Relations Comm. v. Div. of Emp. Sec.* (Mo.App.1993), 856 S.W.2d 376 (holding that WARN payments are fully deductible from Missouri unemployment benefits); *Shelby v. Gaddy* (Ark.App.1993), No. E–92–81, unreported, 1993 WL 116447.

■ It may well be that Congress intended to punish employers who violated the Act by failing to give required notice of plant closure, but it used the term "back pay" to describe an employer's obligations under the Act. See Section 2104(a)(1), Title 29, U.S.Code. In *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, the Ninth Circuit stated that the words "back pay" should be interpreted under the Act with their "normal meaning." 244 F.3d at 1158. The court went on to cite precedent where it had called WARN " 'a wage worker's equivalent of business interruption insurance [that] protects a worker from being told on payday that the plant is closing that afternoon and his stream of income is shut off.' " *Id.* at 1158–1159, quoting *Burns v. Stone Forest Industries, Inc.* (C.A.9, 1998), 147 F.3d 1182, 1184.

It is difficult not to consider the WARN payments as remuneration under Ohio law. Regardless of whether the payments are a "penalty" to the employer, the practical effect of the payments to the employee is that the employee is placed in the position the employee would have been in had the job not been terminated without proper notice. It is pay for work that should have been performed.

The WARN payments must be considered remuneration for purposes of R.C. 4141.31(A)(1) as "remuneration in lieu of notice." That term is defined as a "continuation of wages for a designated period after termination of employment." Ohio Adm.Code 4141–9–08. Stated differently, it means payment made to an employee in lieu of notice of termination of employment.

PMX did not give the required notice of the plant closing, so the WARN payments were remuneration in lieu of notice. The payments may well have been a fine for PMX, but they were the continuation of wages to claimant—wages that she would have received had notice been properly given by PMX. This is precisely what remuneration in lieu of notice is intended to cover.

We are aware that the weight of authority from other states reaches a contrary conclusion, but we are constrained by the unambiguous language of R.C. 4141.31. Despite our obligation to construe the unemployment compensation statutes liberally in favor of coverage, see R.C. 4141.46, we cannot find an ambiguity where none exists. We hold that the WARN payments were made in lieu of notice of termination and are therefore considered remuneration under R.C. 4141.31(A)(1).

We do find that the WARN payments are not remuneration under R.C. 4141.31(A)(4). That section requires unemployment compensation benefits to be reduced by any remuneration in the form of separation or termination pay paid to an employee at the time of separation from employment. Ohio Adm.Code 4141–30–01, titled "Separation Pay," states:

"Payments made to employees in return for their agreeing to a separation from employment shall be deducted from unemployment benefits otherwise payable to them as provided under section 4141.31 of the Revised Code. Such payments shall be deemed to be remuneration in the form of separation pay."

There is nothing in the record to show that claimant "agreed" to her separation, so this provision cannot apply.

Claimant also argues that the WARN payments were not remuneration because she did not perform any "personal services." We agree with the administrator's argument that other types of pay are considered remuneration under the Revised Code, even though an employee has not performed personal services. These include vacation and separation pay, neither of which, by definition, requires that the employee perform any services for the employer.

Claimant next argues that the administrator's decision is unreasonable because it did not come in time for her to make an additional claim for the six weeks of WARN income that must be repaid. She maintains that she had one year from the date of her separation to make an unemployment compensation claim and therefore could have made a second claim for an additional six weeks of pay. She argues that had the administrator made a more timely determination of benefits, she could have filed for six additional weeks.

This issue is beyond the scope of the appeal because it was not presented at the hearing. At no point did claimant make a claim for an additional six weeks of benefits, so the issue is premature.

Finally, claimant argues that the court erred by failing to find that repayment of benefits should have been ordered because the administrator's decision was due to a clerical error within the meaning of R.C. 4141.35(B)(1)(a). She maintains that a bureau worker erroneously told claimant that the WARN payments were not remuneration, and that another destroyed an income statement prepared by her. She maintains that had this income statement been incorporated into her file, the administrator would have discovered the error sooner.

■ There is nothing in the record to suggest that a clerical error of any kind occurred below. She may have received incorrect instructions from a bureau employee, but that is not a clerical error as contemplated by R.C. 4145.35(B)(1)(a). The administrator correctly notes that this is really a claim of equitable estoppel, and a claim of estoppel does not apply against a state or its

agencies in the exercise of a governmental function. *Sekerak v. Fairhill Mental Health Ctr.* (1986), 25 Ohio St.3d 38, 39, 25 OBR 64, 495 N.E.2d 14.

The assignments of errors are overruled.

*Judgment affirmed.*

TERRENCE O'DONNELL, J., concurs.

KENNETH A. ROCCO, P.J., concurs in part and dissents in part.

KENNETH A. ROCCO, Presiding Judge, concurring in part and dissenting in part.

I agree with the majority that the WARN payments to appellant were not "separation pay" that should offset her unemployment benefits under R.C. 4141.31(A)(4). In addition to the reasons cited by the majority, I would also note that the WARN payments to appellant were not made "at the time of [the employee's] separation from employment" but only began some two months later. R.C. 4141.31(A)(4) permits a reduction of benefits only for severance pay which is paid at the time of separation.

On the other hand, I disagree with the majority's conclusion that the WARN payments here were "remuneration in lieu of notice" that should reduce appellant's unemployment compensation benefits under R.C. 4141.31(A)(1). This term is defined by Ohio Adm. Code 4141–9–08 as a *"continuation* of wages for a designated period after termination of employment." (Emphasis added.) While most WARN payments will probably meet this definition, the payments here cannot be considered a "continuation" of wages because they did not even begin until some two months after appellant's employment was terminated. Moreover, in this case, the payments were not made *in lieu* of notice of the termination because there is no evidence appellant here was entitled to notice at the time her own employment was terminated; that right arose only because of the subsequent plant closing.

Therefore, I would find that under the unique circumstances of this case, the WARN payments made to appellant should not reduce her unemployment compensation benefits. Accordingly, I would reverse and remand with directions for the common pleas court to vacate the review commission's decision requiring appellant to repay a portion of the benefits she received.